**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____

|  |  |  |
|---|---|---|
| KEVIN BLACKWELL | : | |
| individually and on behalf | : | |
| of all others similarly situated, | : | No. |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE PHIA GROUP, LLC, and | : | **JURY TRIAL** |
| INDECS CORPORATION, | : | **DEMANDED** |
| | : | |
| Defendants | : | |

_____

**CLASS ACTION COMPLAINT**

Plaintiff, Kevin Blackwell, individually and on behalf of all other persons similarly situated, by counsel, allege the following for their class action complaint against Defendants.

**INTRODUCTION**

1. Plaintiff, and all other similarly situated members of the class he seeks to represent, were covered for non-ERISA health benefits sponsored by member School Districts and sustained injuries for which they secured personal injury settlement recoveries and had liens and repayment demands asserted against their personal injury recoveries by the defendants.

The Defendants violated New York law and the health benefit plan by asserting liens and repayment demands from Plaintiffs' personal injury settlement recoveries.

Defendants' actions violated New York law on two bases:

First, Defendants violated New York State General Obligation Law §5-335 (hereinafter referred to as "NY GOL §5-335") by asserting liens and demands for repayment from Plaintiff's personal injury settlement recoveries.

Second, the Defendants actions violated New York law because the policy under which Defendants demanded and recovered repayment against Plaintiff does not contain a repayment obligation requiring Plaintiff to repay the Defendants.

Plaintiff's case is to recover funds from the entities who illegally took the money from them. Each of these defendants is responsible for the money which they had taken irrespective of what they did with the Plaintiff's funds afterwards.

2. As a consequence, Plaintiff and the members of the class he seeks to represent are entitled to recover from the Defendants damages, penalties, punitive damages, attorney fees, interest, costs and other such other and further relief as this Court may deem just and proper.

**JURISDICTION**

3. This Court possesses diversity jurisdiction over Plaintiff's and class members' claims under 28 U.S. Code § 1332(a).

4. Plaintiff Kevin Blackwell and Defendants INDECS Corp. and THE PHIA GROUP, LLC, are each citizens of different states.

5. The instant matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, because Plaintiff Kevin Blackwell seeks compensatory and punitive damages in excess of $75,000.00 on his individual claims.

**PARTIES**

6. Plaintiff, Kevin Blackwell, is an adult individual and citizen of the State of New York. Kevin Blackwell commenced a lawsuit to recover for personal injuries and damages which he sustained as a result of a motor vehicle accident. As a result of the personal injuries Plaintiff Kevin Blackwell sustained in his accident, Mr. Blackwell received medical benefits through his health benefits coverage sponsored by the member School Districts. While litigation was pending, Plaintiff Kevin Blackwell settled his personal injury action.

7. Defendant THE PHIA GROUP, LLC, (hereinafter "PHIA") is a limited liability company organized and existing under the laws of the State of Massachusetts, with its principal place of business in the Commonwealth of Massachusetts. Defendant THE PHIA GROUP, LLC, as authorized agent for INDECS CORPORATION, asserted liens and repayment demands against Plaintiffs' personal injury recoveries for benefits Plaintiffs had received through health coverage in violation of New York State General Obligation Law §5-335.

8. Defendant THE PHIA GROUP, LLC reports to be:

"an experienced provider of health care cost
containment techniques offering comprehensive
consulting services, legal expertise, plan document
drafting, subrogation and overpayment recovery, claim
negotiation, and plan defense designed to control costs
and protect plan assets."

9. Defendant INDECS CORPORATION (hereinafter "INDECS") is a Delaware corporation with a principle place of business and nerve center in the State of New Jersey. Defendant INDECS CORPORATION is the third-party administrator for a health plan comprised of member school districts in New York.

## STATEMENT OF FACTS

10. Plaintiff Kevin Blackwell was involved in a motor vehicle accident wherein he sustained serious injuries and received benefits under a health insurance policy in and subject to the laws of New York.

11. The Orange-Ulster School Districts Health Plan under which Kevin Blackwell was insured provides in relevant part as follows:

**Other Party Responsibility**. If you suffer injuries for which
another party or payer may be primarily responsible for the
loss or payment of the medical expenses, the Plan has an
independent right to file a claim or pursue other legal
remedies from or against the party that caused the loss, or
any entity which may be responsible for payment of the
medical expenses, to recoup benefits paid by the Plan that
were caused by a third party, or for which payment is
potentially the responsibility of another party. If you
suffer injuries for which another party may be responsible,
or incur medical expenses whose payment may be the

responsibility of another party, please notify the claims administrator. The Plan will determine whether it will bring an action against the potentially responsible party for payment of medical benefits it has provided for your treatment. **You will not personally be responsible to repay the Plan for these benefits,** but the Plan can file a claim or take action directly against parties which may be potentially responsible for the loss or potentially responsible for payment of the medical expenses.

12. Accordingly, the policy under which Defendants demanded and recovered repayment against Plaintiffs, does not contain a repayment obligation requiring Plaintiffs to repay the Defendants.

13. Furthermore, New York General Obligations Law §5-335 provides in relevant part as follows:

**§ 5-335. Limitation of reimbursement and subrogation claims in personal injury and wrongful death actions**

**(a)** When a *person* settles *a claim, whether in litigation or otherwise, against* one or more *other persons* for personal injuries, medical, dental, or podiatric malpractice, or wrongful death, it shall be conclusively presumed that the settlement does not include any compensation for the cost of health care services, loss of earnings or other economic loss to the extent those losses or expenses have been or are obligated to be paid or reimbursed by *an insurer*. By entering into any such settlement, a *person* shall not be deemed to have taken an action in derogation of any right of any *insurer* that paid or is obligated to pay those losses or expenses; nor shall a *person's* entry into such settlement constitute a violation of any contract between the *person* and such *insurer*. *No person* entering into such a settlement shall be subject to a subrogation claim or claim for reimbursement by *an insurer* and *an insurer* shall have no lien or right of subrogation or reimbursement against any such settling *person or any other party to such a settlement*, with respect to those losses or expenses that have been or are obligated to be paid or reimbursed by said *insurer*.

14. Accordingly, pursuant to New York General Obligations Law §5-335, even if the policy had a clause which required repayment, any such clause that purports to give the policy a lien or right of repayment against the Plaintiffs is illegal and void.

15. As a result of the injuries that Plaintiff sustained in the underlying accident, Plaintiff instituted claims for the personal injuries sustained therein and also secured settlement recoveries against the respective tortfeasors.

16. Defendant INDECS, an agent of the Plan, was the manager and/or claims administrator of the Plan.

17. The Administrative Services Agreement between INDECS and the Plan states, in relevant part:

"2.14 Performance Guarantees

Compliance With Law. INDECS agrees to administer its duties under this Agreement at all times with a high degree of skill, prudence and diligence, in accordance with the terms of this Agreement, and in a manner that comports with all requirements applicable to the performance of such duties under any applicable federal or state law or regulation that applies to claims, transactions or duties which are the subject of the Plan or this Agreement. INDECS shall perform all duties and responsibilities assigned to it under this Agreement or under the Plan solely in the interest of Covered Participants, (b) for the exclusive purpose of providing benefits to Covered Participants under the Plan and defraying reasonable expenses of administering the Plan, (c) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims, and (d) in accordance with the requirements of this Agreement, the terms of the Plan, and any applicable federal or state law or regulation."

Exhibit A.

18. Under the Administrative Services Agreement between INDECS and the Plan, INDECS was required to act solely in the interests of the Plan participants for the exclusive purpose of providing benefits to Plan participants under the Plan.

19. INDECS actually undertook a duty towards the plan participants, including Plaintiff, to act solely in the interests of Plan participants for the exclusive purpose of providing benefits to Plan participants under the Plan.

20. Defendant INDECS, as an agent of the Plan, either through its own conduct or through its agent, asserted a lien and demanded repayment as from Plaintiffs personal injury recoveries, either by itself or through its agent, Defendant PHIA, in its capacity as the manager and/or claims administrator of the Plan.

21. Defendant INDECS also retained Defendant Phia as its reimbursement agent to assert a lien and demand repayment as from Plaintiffs's personal injury recoveries.

22. Defendants INDECS and PHIA did assert a lien and did demand repayments as from Plaintiff Kevin Blackwell's personal injury recovery.

23. In response to defendants' unlawful lien and repayment demands, Plaintiff Kevin Blackwell was caused to pay $21,027.02 of his tort recovery to Defendant THE PHIA GROUP, LLC.

24. Further, Defendants INDECS and PHIA actually undertook long term and repeated actions that asserted liens, demanded repayment and actually recovered hundreds of thousands of dollars

in repayment from Plaintiffs despite General Obligations Law §5-335's prohibition against liens for repayment and the policy's not having any repayment obligation requiring Plaintiffs to repay the defendants.

25. Defendants INDECS and PHIA acted pursuant to a common plan or design (a "Recovery Services Agreement") to recover repayment despite General Obligations Law §5-335's prohibition against liens for repayment and the policy's not having any repayment obligation requiring Plaintiffs to repay the Defendants.

26. Defendants INDECS and PHIA actively took part in the plan or design to recover repayment despite General Obligations Law §5-335's prohibition against liens for repayment and the policy's not having any repayment obligation requiring Plaintiffs to repay the Defendants.

27. Defendants INDECS and PHIA furthered the plan or design by cooperating to recover repayment despite General Obligations Law §5-335's prohibition against liens for repayment and the policy's not having any repayment obligation requiring Plaintiffs to repay the Defendants.

28. Defendants INDECS and PHIA also aided and/or encouraged each other to recover repayment despite General Obligations Law §5-335's prohibition against liens for repayment and the policy's not having any repayment obligation requiring Plaintiffs to repay the Defendants.

29. Defendants INDECS and PHIA also ratified and adopted the actions to recover repayment despite General Obligations Law §5-335's prohibition against liens for repayment and the policy's not having any repayment obligation requiring Plaintiffs to repay the Defendants by collecting repayment from Plaintiffs and keeping the money which they recovered from Plaintiff's repayment.

30. Defendant THE PHIA GROUP, LLC retains a percentage of the money which it recovers through their lien and repayment demands and efforts.

31. Defendants, through their conduct, actively, systemically, purposefully, and intentionally recovered over $415,309.78 in repayments from Plaintiffs' personal injury recoveries to which they were not legally entitled. *Weyant v. Phia Group and INDECS Corp.*, No. 17-cv-8230-LGS, Dkt. No. 1.

32. Based on the specialized health insurance services and products the defendants offer in New York, Defendants knew or should have known that health insurance liens and reimbursement are prohibited under New York law and were not authorized by the terms of the Plan.

33. In fact, Defendants had actual knowledge that liens and reimbursement are prohibited under New York law.

34. Further, Defendants had actual knowledge that the terms of the plan did not contain any repayment terms obligating Plaintiff to repay to Defendants the benefits paid by the Plan

for the treatment he received as a result of the injuries he
sustained in his motor vehicle accident.

35. In fact, in the companion matter of *Weyant v. INDECS
Corp., et al.*, No. 17-cv-8230-LGS, Defendants admitted that the
Plan's Third Party Recovery provision does not authorize a
reimbursement claim against plan members.

36. Thus, both Defendants had actual knowledge that the
terms of the Plan did not authorize their demands for
reimbursement of health benefits paid to Plaintiff from
Plaintiff's personal injury recovery.

37. Further, in the matter of *Jessica Weyant v. INDECS
Corp., et al.*, PHIA produced a chart, created by Phia employees,
summarizing the laws of various states regarding claims for
reimbursement of benefits paid from personal injury recoveries.
This chart is annexed hereto as Exhibit "B."

38. The chart demonstrates that Defendants had actual
knowledge that its claims for reimbursement were prohibited by
New York GOL § 5-335.

39. Specifically, the chart demonstrates as follows:

| **State** | **Subrogation** | **Reimbursement** | **Exceptions (CAN be activated)** |
|---|---|---|---|
| NEW YORK | YES | NO | COORDINATION/ REIMBURSEMENT FROM NO-FAULT AUTO IS PERMITTED |
| | | | Allowed if plan intervenes in a judgment but not if plan participant obtains a settlement. Coordination with no-fault benefits is permitted. |

40. Defendants did not intervene in a judgment involving Plaintiff and did not assert against Plaintiff any demand for repayment under the Plan's coordination of benefits provision regarding no-fault benefits.

41. Despite actual knowledge that their reimbursement demands were not authorized by the terms of the Plan and were prohibited by New York GOL § 5-335, Defendants still nonetheless demanded reimbursement of health benefits paid to Plaintiff from Plaintiff's personal injury recovery.

42. Despite actual knowledge that their reimbursement demands were not authorized by the terms of the Plan and were prohibited by New York GOL § 5-335, Defendants misrepresented to Plaintiff that they were entitled to reimbursement of the health benefits paid to Plaintiff from Plaintiff's personal injury recovery.

43. Despite actual knowledge that their reimbursement demands were not authorized by the terms of the Plan and were prohibited by New York GOL § 5-335, Defendants misrepresented to Plaintiff that the Plan contained terms that required him to reimburse the health benefits paid to Plaintiff from Plaintiff's personal injury recovery.

44. Despite actual knowledge that their reimbursement demands were not authorized by the terms of the Plan and were prohibited by New York GOL § 5-335, Defendants purposefully did not disclose to Plaintiff that the Plan did not contain terms

that required him to reimburse the health benefits paid to
Plaintiff from Plaintiff's personal injury recovery.

45. Despite actual knowledge that their reimbursement
demands were not authorized by the terms of the Plan and were
prohibited by New York GOL § 5-335, Defendants misrepresented
to Plaintiff that heir reimbursement demand was lawful.

46. Despite actual knowledge that their reimbursement
demands were not authorized by the terms of the Plan and were
prohibited by New York GOL § 5-335, Defendants purposefully did
not disclose to Plaintiff that New York law prohibited Defendants
from demanding reimbursement of the health benefits paid to
Plaintiff from Plaintiff's personal injury recovery.

47. Despite actual knowledge that their reimbursement
demands were not authorized by the terms of the Plan and were
prohibited by New York GOL § 5-335, Defendants, demanded,
took and received money as reimbursement of health benefits paid
to Plaintiff from Plaintiff's personal injury recovery.

48. Defendants' actions were part of an intentional and
purposeful practice and plan to collect money from plan members
even though Defendants knew that demanding and collecting
reimbursement for benefits paid from plan members' personal
injury recoveries violated both New York GOL § 5-335 and the
terms of the Plan.

49. Defendants made repeated and pervasive representations
to Plaintiff and to hundreds of other plan members that

Defendants were legally entitled to repayment as from Plaintiff's
personal injury recoveries even though Defendants knew that
demanding and collecting reimbursement for benefits paid from
plan members' personal injury recoveries violated both New York
GOL § 5-335 and the terms of the Plan.

50. Because Defendant PHIA retains a percentage of the money
which it recovers through their lien and repayment demands and
efforts, Defendants possessed a fraudulent motive of monetary
gain in demanding and collecting repayment as from Plaintiff's
personal injury recoveries, even though Defendants knew that
demanding and collecting reimbursement for benefits paid from
plan members' personal injury recoveries violated both New York
GOL § 5-335 and the terms of the Plan.

51. In demanding and recovering repayment of benefits the
plan paid to Plaintiff and other plan members from their personal
injury settlement recovery, even though Defendants knew that
demanding and collecting reimbursement for benefits paid from
plan members' personal injury recoveries violated both New York
GOL § 5-335 and the terms of the Plan, Defendants willfully and
wantonly disregarded Plaintiff's and other plan members' rights.

52. The Defendants' actions as aforementioned were pursuant
to a common policy and practice with respect to the Plaintiffs
and as to all other class members.

53. Defendants, through their conduct as aforementioned,
actively, affirmatively, and systematically misinformed the plan

members that Defendants were entitled to liens and repayment.

54. Defendants actively, affirmatively, and systematically sent out hundreds of letters to plan members, including Plaintiff, for the purpose of misinforming the plan members that Defendants were entitled to liens and repayment of plan benefits paid from their personal injury settlement recoveries.

55. Defendants' conduct, either by themselves or through their agents, was not only directed towards Plaintiff herein, but was part of a pattern of similar conduct directed at the public generally which culminated in Defendants having collected hundreds of thousands of dollars that they were not entitled to collect.

56. By way of example, Defendants admitted that they collected $415,309.78 in repayment between November, 2013, and October, 2017. *Weyant v. Phia Group and INDECS Corp.*, No. 17-cv-8230-LGS, Dkt. No. 1.

57. Further, in *Weyant*, Defendants also produced a "batch list" demonstrating that they also collected $246,795.77 from 45 individuals. This batch list is annexed hereto as Exhibit "C."

58. Further documentation provided by the Plan in its counterclaims against Defendants in *Weyant v. Phia Group and INDECS Corp.*, No. 17-cv-8230-LGS demonstrates that Defendants collected an additional $62,378.08 pursuant to its recovery demands from October 2017 through July 2018. These documents are annexed hereto as Exhibit "D."

## Violation of Statute

59.  The present matter arises under New York's General

Obligations Law §5-335.

60. On November 13, 2013, Governor Andrew Cuomo signed into

law New York's General Obligations Law §5-335.

61. General Obligations Law §5-335 provides in relevant part

as follows:

**§ 5-335. Limitation of reimbursement and subrogation claims in personal injury and wrongful death actions**

**(a)** When a *person* settles *a claim, whether in litigation or otherwise, against* one or more *other persons* for personal injuries, medical, dental, or podiatric malpractice, or wrongful death, it shall be conclusively presumed that the settlement does not include any compensation for the cost of health care services, loss of earnings or other economic loss to the extent those losses or expenses have been or are obligated to be paid or reimbursed by *an insurer*. By entering into any such settlement, a *person* shall not be deemed to have taken an action in derogation of any right of any *insurer* that paid or is obligated to pay those losses or expenses; nor shall a *person's* entry into such settlement constitute a violation of any contract between the *person* and such *insurer*. *No person* entering into such a settlement shall be subject to a subrogation claim or claim for reimbursement by *an insurer* and *an insurer* shall have no lien or right of subrogation or reimbursement against any such settling *person or any other party to such a settlement*, with respect to those losses or expenses that have been or are obligated to be paid or reimbursed by said *insurer*.

62. Pursuant to New York General Obligations Law §5-335, any

clause in any health insurance policy or contract which gave the

benefit provider a lien or right of subrogation or reimbursement

against the settling party, with respect to medical expenses that

have been paid or that were obligated to be paid/reimbursed by

the benefit provider was rendered illegal and void.

63. Subsequent to the enactment and after the effective date of New York General Obligations Law §5-335, Defendants continued to assert liens and repayment demands against plan members' personal injury, medical, dental, or podiatric malpractice, or wrongful death settlement recoveries.

64. Subsequent to the enactment and after effective date of New York General Obligations Law §5-335, Defendants mailed and/or faxed letters to Plaintiff asserting and seeking to collect on liens and reimbursement as an agent for INDECS CORPORATION with regard to member school district health benefits.

65. It is believed, and therefore averred, that subsequent to the enactment and after the effective date of New York General Obligations Law §5-335, the defendants have illegally asserted liens and rights of reimbursement and recovered monies from the personal injury settlement recoveries against not only the plaintiff, Kevin Blackwell, but also against other persons in violation of New York General Obligations Law §5-335.

66. Defendant THE PHIA GROUP, LLC's statements regarding the enforcement of the lien were false and misleading, and indeed contrary to the terms of New York General Obligations Law §5-335, which expressly provides that "no party entering into such a settlement shall be subject to a subrogation claim or claim for reimbursement by a benefit provider and a benefit provider shall have no lien or right of subrogation or reimbursement against any

such settling party..."

67. THE PHIA GROUP, LLC has asserted and continues to assert liens against other plaintiffs and/or claimants that have settled New York lawsuits and/or claims, by wrongfully alleging liens and demands for reimbursement of health plans in violation of New York General Obligations Law §5-335.

68. THE PHIA GROUP, LLC has fraudulently, deceptively, unlawfully and wrongfully collected monies from plaintiffs and/or claimants that have settled New York lawsuits and/or claims, by wrongfully alleging liens and rights of reimbursement of health plans in violation of New York General Obligations Law §5-335.

69. Defendant THE PHIA GROUP, LLC has asserted and continues to assert liens and repayment demands against other plaintiffs and/or claimants have settled their personal injury, medical, dental, or podiatric malpractice, or wrongful death settlement recoveries in violation of New York General Obligations Law §5-335.

70. Defendant THE PHIA GROUP, LLC has wrongfully kept and maintains the monies which it received from its liens and repayment demands from other injured insureds' personal injury settlement recoveries subsequent to the enactment and after the effective date of New York General Obligations Law §5-335 even after THE PHIA GROUP, LLC was or became aware that all of those monies which it received was improper and unlawfully secured.

71. Defendant INDECS CORPORATION has wrongfully kept and maintain the monies which they received from its lien and repayment demands from other injured insureds' personal injury settlement recoveries subsequent to the enactment and after the effective date of New York General Obligations Law §5-335 even after INDECS CORPORATION was or became aware that all of those monies which INDECS CORPORATION received was improper and unlawfully secured.

72.  Further, Defendants have continuously, systematically and wrongfully acted against Blackwell and class members by wrongfully asserting claims for reimbursement against Blackwell and against class members who were covered by a health benefits plan provided by School Districts who received personal injury, medical, dental, or podiatric malpractice, or wrongful death settlement recoveries and who suffered damages through their payment to defendants or other economic loss, before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses.

## **Violation of Plan Provisions**

73.  The present matter also arises under the terms of the Orange-Ulster School Districts Health Plan

74. The Orange-Ulster School Districts Health Plan provides in relevant part as follows:

**Other Party Responsibility.** If you suffer injuries for which another party or payer may be primarily responsible for the

loss or payment of the medical expenses, the Plan has an
independent right to file a claim or pursue other legal
remedies from or against the party that caused the loss, or
any entity which may be responsible for payment of the
medical expenses, to recoup benefits paid by the Plan that
were caused by a third party, or for which payment is
potentially the responsibility of another party. If you
suffer injuries for which another party may be responsible,
or incur medical expenses whose payment may be the
responsibility of another party, please notify the claims
administrator. The Plan will determine whether it will bring
an action against the potentially responsible party for
payment of medical benefits it has provided for your
treatment. **You will not personally be responsible to repay
the Plan for these benefits**, but the Plan can file a claim
or take action directly against parties which may be
potentially responsible for the loss or potentially
responsible for payment of the medical expenses. (emphasis
added)

75. Pursuant to the Orange-Ulster School Districts Health
Plan, Plaintiff and other members of the Orange-Ulster School
Districts Health Plan are not personally responsible to repay the
Plan for any benefits that the Plan paid as a result of injuries
caused by other parties.

76. However, despite the aforementioned Plan language,
Defendants asserted liens and repayment demands against
Plaintiff's personal injury, medical, dental, or podiatric
malpractice, or wrongful death settlement recoveries (hereinafter
"personal injury settlement recoveries").

77. Further, Defendants mailed and/or faxed letters to
Plaintiff asserting and seeking to collect on a lien and right of
reimbursement with regard to member school district health
benefits.

78.   Defendants have asserted liens and rights of reimbursement and recovered monies from the personal injury settlement recoveries against not only Plaintiff, Kevin Blackwell, but also against other persons in violation of the clear terms of the Plan as aforesaid.

79. Defendant THE PHIA GROUP, LLC's statements regarding the enforcement of the lien were fraudulent, false, and misleading, and indeed contrary to the aforementioned terms of the Orange-Ulster School Districts Health Plan, which expressly provides that the Plaintiff and other Plan members "will not personally be responsible to repay the Plan for these benefits."

80. THE PHIA GROUP, LLC has asserted and continues to assert liens against other plaintiffs and/or claimants that have settled New York lawsuits and/or claims, by wrongfully alleging liens and rights of reimbursement of health plans in violation of the aforementioned terms of the Orange-Ulster School Districts Health Plan.

81. THE PHIA GROUP, LLC has fraudulently, deceptively, unlawfully and wrongfully collected monies from plaintiffs and/or claimants that have settled New York lawsuits and/or claims, by wrongfully alleging liens and rights of reimbursement of health plans in violation of the aforementioned terms of the Orange-Ulster School Districts Health Plan.

82. Defendant THE PHIA GROUP, LLC has asserted and continues to assert liens against other plaintiffs and/or claimants have

settled their personal injury, medical, dental, or podiatric malpractice, or wrongful death settlement recoveries in violation of the aforementioned terms of the Orange-Ulster School Districts Health Plan.

83. Defendant THE PHIA GROUP, LLC has wrongfully kept and maintains the monies which it received from its liens and repayment demands from other injured insureds' personal injury settlement recoveries even after THE PHIA GROUP, LLC was or became aware that all of those monies which it received was improper and unlawfully secured in violation of the aforementioned terms of the Orange-Ulster School Districts Health Plan.

84. Defendant INDECS CORPORATION has wrongfully kept and maintains the monies which it received from its liens and repayment demands from other injured insureds' personal injury settlement recoveries even after THE PHIA GROUP, LLC was or became aware that all of those monies which it received was improper and unlawfully secured in violation of the aforementioned terms of the Orange-Ulster School Districts Health Plan.

85. For the aforementioned reasons, the lien asserted by Defendant THE PHIA GROUP, LLC, as agent for INDECS CORPORATION, against Plaintiff is thus improper as matter of law and contract.

86. Because the lien asserted by Defendant THE PHIA GROUP, LLC, as agent for INDECS CORPORATION, against Plaintiff is

improper as matter of law and contract, any payments made by
Plaintiff or any other Class members to Defendant THE PHIA GROUP,
LLC is without consideration.

87. Further, Defendant THE PHIA GROUP, LLC, as agent for
INDECS CORPORATION, fraudulently induced Plaintiff into paying
money to Defendants by materially misrepresenting that the Plan
required Plaintiff to reimburse the health benefits paid to
Plaintiff from Plaintiff's personal injury recovery, knowing that
its representation to Plaintiff was untrue and intending thereby
to deceive Plaintiff in order to cause him to pay a portion of
his personal injury settlement to Defendants.

## CLASS ACTION ALLEGATIONS

**A.   DEFINITION OF THE CLASS**

88. Plaintiffs, and the other similarly situated
individuals, constitute a class within the meaning of Federal
Rule of Civil Procedure 23.

89. Plaintiff brings this action as a class action on behalf
the class defined as:

> i. All persons covered by a health benefits plan
> provided by School Districts who received personal
> injury, medical, dental, or podiatric malpractice, or
> wrongful death settlement recoveries and who suffered
> damages through their payment to defendants or other
> economic loss, as a result of defendants' assertion and
> demand for liens and repayment against their settlement
> recoveries after the enactment and effective date and
> in violation of in violation of New York State General
> Obligation Law §5-335;

ii. All persons covered by a health benefits plan
provided by School Districts who received personal
injury, medical, dental, or podiatric malpractice or
wrongful death settlement recoveries and against whom
the defendants wrongfully asserted liens and repayment
from their personal injury settlement recoveries after
the enactment and effective date and in violation of
New York General Obligations Law §5-335;

iii. All persons covered by a health benefits plan
provided by School Districts who received personal
injury, medical, dental, or podiatric malpractice, or
wrongful death settlement recoveries and who suffered
damages through their payment to defendants or other
economic loss, as a result of defendants' assertion and
demand for liens and repayment against their settlement
recoveries and the policy under which defendants
recovered repayment do not contain a repayment
obligation requiring Plaintiffs to repay the
Defendants;

iv. All persons covered by a health benefits plan
provided by School Districts who received personal
injury, medical, dental, or podiatric malpractice or
wrongful death settlement recoveries and against whom
the defendants wrongfully asserted liens and repayment
from their personal injury settlement recoveries and
the policy under which defendants recovered repayment
do not contain a repayment obligation requiring
Plaintiffs to repay the Defendants;

v. All persons covered by a health benefits plan provided by
School Districts who received personal injury, medical,
dental, or podiatric malpractice, or wrongful death
settlement recoveries and who suffered damages through their
payment to defendants or other economic loss, as a result of
defendants' assertion and demand for liens and repayment
against their settlement recoveries before the insured had
first been made whole and fully compensated for all of their
damages and losses.

90. The plaintiff, Kevin Blackwell, reserves the right to

amend the definition and/or identify subclasses upon completion

of class discovery.

**B.**   **NUMEROSITY**

91. The Class is so numerous as to render joinder of all
members impracticable because the Plan is composed of at least 18
school districts and covers the employees, retirees, and
dependants of employees/retirees in those 18 school districts.
The identities of a majority of the Class members are presently
unknown but are ascertainable through appropriate discovery.
Plaintiff reasonably believes that there are hundreds of members
in the proposed Class. Members of the Class may be identified
from records maintained by Defendants and may be notified of the
pendency of this action by mail, or the internet or publication
using the form of notice similar to that customarily used in
class actions.

**C.**   **TYPICALITY**

92. Plaintiffs' claims are typical of the claims of other
members of the Class. All such claims arise out of the
Defendants' wrongful assertion of liens and reimbursement demands
against the personal injury recoveries of Plaintiffs and the
proposed Class members. Plaintiffs and the proposed Class members
have suffered a common injury arising out of the Defendants'
common course of conduct as alleged herein.

**D.**   **EXISTENCE AND PREDOMINANCE OF COMMON ISSUES**

93. Common questions of law and fact are applicable to all
members of the Class and predominate over any questions that

might solely affect individual members of the class.

94. The common questions of law and fact arise from and concern the following facts and actions:

a.    all Class members are covered by health benefits plan provided by the member School Districts under and subject to the laws of the State of New York;

b.    all Class members received medical benefits from the health benefits plan sponsored by the member School Districts as a result of personal injuries they sustained;

c.    the Defendants asserted liens and reimbursement demands to all of the Class members in violation of New York's anti-subrogation law and the plan terms.

d.    the Defendants asserted liens and reimbursement demands to all of the Class members under a policy which does not contain a repayment obligation requiring Plaintiff and class members to repay the Defendants;

e.    whether New York General Obligations Law §5-335 was violated by Defendants' practice of collecting and/or asserting liens and reimbursement demands as against Plaintiff's and class members' personal injury recoveries;

f.    whether the Plan, which does not contain any repayment obligation by Plaintiff, was violated by Defendants' practice of collecting and/or asserting liens and

reimbursement demands as against Plaintiff's and class
members' personal injury recoveries.

95. The questions of law and fact common to the members of
the Class, as above noted, predominate over any questions
affecting only individual members, and thus, this class action is
superior to other available methods for the fair and efficient
adjudication of this controversy.

E.    **SUPERIORITY**

96. A class action is superior to other available methods
for a fair and efficient adjudication of this controversy because
individual joinder of all members of the Class is impractical.
Furthermore, damages suffered by members of the Class may be
relatively small when compared to the expense and burden of
individual litigation, which would make it difficult or
impossible for individual members of the Class to obtain relief.
The interests of judicial economy favor adjudicating the claims
of the Class on a classwide basis rather than an individual
basis. There will be no difficulty in the management of this
action as a class action.

F.    **ADEQUATE REPRESENTATION**

97. Plaintiff will fairly and adequately protect and
represent the interests of the Class and have no interest
antagonistic to, or in conflict with, those of other Class
members.

98. Plaintiff is willing and prepared to serve the proposed Class in a representative capacity with all the obligations and duties material herein.

99. Plaintiff has the time and resources to prosecute this action and has retained qualified counsel who have had extensive experience in matters involving the rights of insureds and federal court litigation. Plaintiffs intend to prosecute this action vigorously for the benefit of the Class.

**G. RISKS OF INCONSISTENT OR VARYING ADJUDICATION**

100. Class treatment is proper in this proceeding in order to avoid inconsistent or varying adjudications with respect to individual Class members.

101. Pursuant to law, the Class meets all the requirements for class certification.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Declaratory Judgment)**

102. Plaintiff, Kevin Blackwell, individually and on behalf of a Class of Similarly Situated Persons, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

103. New York General Obligations Law §5-335 prohibits the enforcement of contractual liens against personal injury settlements. In contravention to such prohibition, the Defendants have attempted to and have enforced such liens.

104. Further, the policies under which defendants demanded and recovered repayment against Plaintiffs do not contain a

repayment obligation requiring Plaintiffs to repay the Defendants.

105. As a result, INDECS CORPORATION, as agent of the Plan, has no right to assert and/or collect, either itself or through an agent, any liens or reimbursement on behalf of the Plan as against other insureds who have settled personal injury, medical, dental, podiatric malpractice, or wrongful death cases.

106. As a result, THE PHIA GROUP, LLC, as agent for INDECS CORPORATION, has no right to assert and/or collect any liens or reimbursement on behalf of INDECS and/or the Plan against other insureds who have settled personal injury, medical, dental, podiatric malpractice, or wrongful death cases or claims.

107. Accordingly, Plaintiff, Kevin Blackwell, individually and on behalf of a Class of Similarly Situated Persons, are entitled to a judgment pursuant to the Declaratory Judgment Act declaring that:

> (a) The Defendants do not have a right to assert and/or collect any lien or reimbursement under health insurance plans against other insureds who have settled personal injury, medical, dental, podiatric malpractice, or wrongful death cases or claims on or after the enactment and effective date of New York General Obligations Law §5-335.

> (b) The Defendants do not have a right to assert and/or collect any lien or reimbursement under health insurance plans against other insureds who have settled personal injury, medical, dental, podiatric malpractice, or wrongful death cases under policies which do not contain a repayment obligation requiring Plaintiffs to repay the Defendants.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Claims for Violation of New York GOL §5-335)

108. Plaintiff, Kevin Blackwell, individually and on behalf of a Class of Similarly Situated Persons, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

109. INDECS CORPORATION, through its actions and by the conduct of its agent, THE PHIA GROUP, LLC, acting as an agent for INDECS CORPORATION, asserted, and continued to assert, a lien and demand for repayment for the benefits which the Plan paid as against Plaintiffs' personal injury settlement recoveries on or after the enactment and effective date of New York General Obligations Law §5-335.

110. In asserting such liens and demands for repayment, THE PHIA GROUP, LLC acted at the direction and behest, and with the permission and consent, of INDECS CORPORATION.

111. In asserting such liens and demands for repayment, THE PHIA GROUP, LLC acted within the course and scope of its retention by, and agency of, INDECS CORPORATION.

112. Pursuant to New York General Obligations Law §5-335, health insurers are prohibited from asserting liens and reimbursement claims.

113. The Orange-Ulster School Districts Health Plan is an insurer for purposes of New York General Obligations Law §5-335.

114. As agents of an insurer, New York General Obligations Law §5-335 is equally applicable and prohibits Defendants from

asserting liens and demands for repayment as against Plaintiff's personal injury settlement recoveries.

115. Defendants' assertion of liens and demands for repayment as against Plaintiff's personal injury settlement recoveries is a violation of New York General Obligations Law §5-335.

116. As a result of Defendants' violation of New York General Obligations Law §5-335, Plaintiffs are entitled to declaratory, injunctive and monetary relief as set forth hereinafter.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Claims for Violation of the
### Orange-Ulster School Districts Health Plan)

117. Plaintiff, Kevin Blackwell, individually and on behalf of a Class of Similarly Situated Persons, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

118. INDECS CORPORATION, through its actions and by the conduct of its agent, THE PHIA GROUP, LLC, acting as an agent for INDECS CORPORATION, asserted, and continued to assert, a lien and demand for repayment for the benefits which the Plan paid as against Plaintiffs' personal injury settlement recoveries in violation of the terms of the Orange-Ulster School Districts Health Plan.

119. In asserting such liens and demands for repayment, THE PHIA GROUP, LLC acted at the direction and behest, and with the

permission and consent, of INDECS CORPORATION.

120. In asserting such liens and demand for repayment, THE PHIA GROUP, LLC acted within the course and scope of its retention by, and agency of, INDECS CORPORATION.

121. Pursuant to the terms of the Orange-Ulster School Districts Health Plan, the Plaintiff and other members of the Plan are "not personally be responsible to repay the Plan for the benefits" the Plan pays as a result of injuries caused by other parties.

122. Defendants' assertion of liens and demands for repayment as against Plaintiff's personal injury settlement recoveries is a violation of the terms of the Orange-Ulster School Districts Health Plan.

123. As a result of Defendants' violation of the terms of the Orange-Ulster School Districts Health Plan, Plaintiffs are entitled to declaratory, injunctive, and monetary relief as set forth hereinafter.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Claims for Violation of the New York General Business Law 349)**

124. Plaintiff, Kevin Blackwell, individually and on behalf of a Class of Similarly Situated Persons, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

125. Section 349 of the New York's General Business Law states:

> Deceptive acts or practice in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

126. Defendants committed deceptive acts and practices whereby Defendants made repeated and pervasive representations to Plaintiffs and similarly situated Class members that, Defendants were legally entitled to liens and repayment as from Plaintiff's personal injury recoveries even after the enactment and effective date of New York General Obligations Law §5-335.

127. Defendants committed deceptive acts and practices whereby Defendants made repeated and pervasive representations to Plaintiffs and similarly situated Class members that Defendants were legally entitled to liens and repayment as from Plaintiff's personal injury recoveries under policies which do not contain a repayment obligation requiring Plaintiff to repay the Defendants.

128. Defendants, through their conduct, actively, affirmatively, and systematically misinformed the insureds that Defendants were entitled to liens and repayment.

129. Defendants, through their conduct, actively and systemically recovered from insureds literally hundreds of thousands of dollars in repayments as to which Defendants were not legally entitled.

130. Defendants, through their conduct, actively and systemically stated to Plaintiffs and other Class members that

they were obligated to pay liens and make repayment from the injury settlement recoveries under health insurance plans.

131. Defendants disseminated false and misleading statements to Plaintiffs and other Class members in furtherance of Defendants' scheme to assert and collect liens under health insurance plans against other insureds who settled injury lawsuits or claims in violation of New York General Obligations Law §5-335.

132. Defendants disseminated false and misleading statements to Plaintiff and other Class members in furtherance of Defendants' scheme to assert and collect liens under health insurance plans against other insureds who settled injury lawsuits or claims under policies which do not contain a repayment obligation requiring Plaintiff and other Class members to repay the Defendants.

133. Defendants' deceptive acts and practices have enabled Defendants to collect hundreds of thousands of dollars in health insurance liens that they were not entitled to enforce or collect following the enactment and effective date of New York General Obligations Law §5-335.

134. Defendants' deceptive acts and practices have enabled Defendants to collect hundreds of thousands of dollars in health insurance liens that they were not entitled to enforce or collect under the policy.

135. Defendant's deceptive acts as aforesaid were misleading in a material way and have ramifications for the public.

136. In that regard, Defendants actively, affirmatively, and systematically sent out hundreds of letters to plan members, including Plaintiff, for the purpose of misinforming the plan members that Defendants were entitled to liens and repayment of plan benefits paid from their personal injury settlement recoveries.

137. Defendants' conduct, either by themselves or through their agents, was not only directed towards Plaintiff herein, but was part of a pattern of similar conduct directed at the public generally which culminated in Defendants having collected hundreds of thousands of dollars that they were not entitled to collect.

138. By way of example, Defendants admitted that they collected $415,309.78 in repayment between November, 2013, and October, 2017. *Weyant v. Phia Group and INDECS Corp.*, No. 17-cv-8230-LGS, Dkt. No. 1.

139. Further, in *Weyant*, Defendants produced a "batch list" demonstrating that they collected $246,795.77 from 45 individuals. This batch list is annexed hereto as Exhibit "C."

140. Further documentation provided by the Plan in its counterclaims against Defendants in *Weyant v. Phia Group and INDECS Corp.*, No. 17-cv-8230-LGS, demonstrates that Defendants collected an additional $62,378.08 pursuant to its recovery

demands from October 2017 through July 2018. These documents are annexed hereto as Exhibit "D."

141. Thus, even after suit was brought against them, Defendants continued to collect money from other plan members despite both New York law and the Plan terms prohibiting such actions.

142. Accordingly, as Exhibits C and D demonstrate, Defendants actions were not just directed at Plaintiff herein, but were part of a pattern of similar conduct directed at the public generally.

143. Defendants' conduct and actions, as described above, constitute deceptive business practices in violation of the New York General Business Law.

144. The damages sustained by Plaintiffs and the other Class members were a direct and foreseeable result of, and were proximately caused by, Defendants' deceptive business practices.

145. As a result of Defendants' actions, Plaintiff and other Class members have been injured and damaged in an amount to be determined at trial.

146. Defendants, through their conduct or by their agents, directed their conduct not just at Plaintiff herein but was part of a pattern of similar conduct directed at the public generally which culminated in defendants having collected hundreds of thousands of dollars in health insurance liens that they were not entitled to enforce or collect following the enactment and

effective date of New York General Obligations Law §5-335.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (Claims for Conversion)

147. Plaintiff, Kevin Blackwell, individually and on behalf
of a Class of Similarly Situated Persons, repeats and re-alleges
the allegations of the preceding paragraphs as if fully restated
herein.

148. Plaintiff possessed property in the form of
compensation received for injuries suffered.

149. Plaintiff had a superior right to immediate possession
and use of the compensation he received for such injuries.

150. Defendants' conduct in asserting liens and demands for
repayment and in securing payment from Plaintiff's personal
injury recoveries was an unlawful interference with Plaintiffs'
superior right to immediate possession and use of the
compensation received.

151. As a result of Defendants' unlawful interference with
Plaintiffs' compensation, Plaintiffs are entitled to declaratory,
injunctive and monetary relief as set forth hereinafter.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (CLAIM FOR MONEY HAD AND RECEIVED)

152. Plaintiff, Kevin Blackwell, individually and on behalf
of a Class of Similarly Situated Persons, repeats and re-alleges
the allegations of the preceding paragraphs as if fully restated
herein.

153. As a result of Defendants' liens and repayment demands from Plaintiff's and other injured plan members' personal injury settlement recoveries subsequent to the enactment and after the effective date of New York General Obligations Law §5-335, Defendants received money rightfully and lawfully belonging to Plaintiff and other insureds.

154. As a result of Defendants having received money pursuant to their liens and repayment demands from Plaintiff's and other injured insureds' personal injury settlement recoveries subsequent to the enactment and after the effective date of New York General Obligations Law §5-335, Defendants benefitted by retaining a portion of Plaintiff's personal injury recovery as fees for their unlawful reimbursement activities on behalf of the Plan.

155. Under principles of good conscience, Defendants should not be allowed to retain the money that they received pursuant to their liens and repayment demands from Plaintiff's and other injured insureds' personal injury settlement recoveries subsequent to the enactment and after the effective date of New York General Obligations Law §5-335.

156. Further, as a result of Defendants' liens and repayment demands from Plaintiff's and other injured insureds' personal injury settlement recoveries in violation of the terms of the Orange-Ulster School Districts Health Plan, Defendants received money rightfully and lawfully belonging to Plaintiff and other

insureds.

157. As a result of Defendants having received money pursuant to their liens and repayment demands from Plaintiff's and other injured insureds' personal injury settlement recoveries in violation of the terms of the Orange-Ulster School Districts Health Plan, Defendants benefitted by retaining a portion of Plaintiff's personal injury recovery as fees for their unlawful reimbursement activities on behalf of the Plan.

158. Under principles of good conscience, Defendants should not be allowed to retain the money that they received pursuant to their liens and repayment demands from Plaintiff's and other injured insureds' personal injury settlement recoveries in violation of the terms of the Orange-Ulster School Districts Health Plan.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### (CLAIM FOR COMMON LAW FRAUD)

159. Plaintiff, Kevin Blackwell, individually and on behalf of a Class of Similarly Situated Persons, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

160. As plan managers and/or claims administrators for the self-funded Orange-Ulster School Districts Health Plan, Defendants were required to act solely in the interests of the Plan members and had an affirmative duty to not fraudulently misrepresent their entitlement to lien, subrogation and/or repayment as from Plaintiff's personal injury recoveries.

161. Defendants made repeated and pervasive representations that Defendants were legally entitled to lien, subrogation and/or repayment as from Plaintiff's personal injury recoveries.

162. Defendants actively, affirmatively, and systematically misrepresented to the Plaintiff and other plan members that they were entitled to liens, subrogation and repayment.

163. Defendants had actual knowledge that their misrepresentations as to their purported entitlement to lien, subrogation and/or repayment as from Plaintiff's personal injury recoveries, and Plaintiff's obligation to pay to Defendants pursuant to their lien, subrogation and/or repayment demands, was false when those representations were made.

164. As a result of Defendants' misrepresentations to Plaintiff and other insureds, Defendants actively and systemically recovered from the Plaintiff and other plan members hundreds of thousands of dollars in repayments as to which they were not legally entitled.

165. As plan managers and/or claims administrators for the self-funded Orange-Ulster School Districts Health Plan, Defendants were required to act solely in the interests of the Plan members and had an affirmative duty to disclose to Plaintiff and the other plan members material information relating to their administration of the Orange-Ulster School Districts Health Plan, including material information relating to their asserted rights to lien, subrogation and/or repayment as from Plaintiff's

personal injury recoveries.

166. In asserting their rights to lien, subrogation and/or repayment as from Plaintiff's personal injury recoveries, Defendants failed to disclose material information that they were not entitled to lien, subrogation and/or repayment as from Plaintiff's personal injury recoveries under GOL § 5-335 or the terms of the Plan.

167. In failing to disclose that they had no right lien, subrogation and/or repayment as from Plaintiff's personal injury recoveries under GOL § 5-335 or the terms of the Plan, Defendants intended to deceive Plaintiff and other plan members as to their right to lien, subrogation and/or repayment as from Plaintiff's personal injury recoveries.

168. As a result of Defendants' failure to disclose material information to Plaintiff and other plan members, Defendants actively and systemically recovered from the Plaintiff and other plan members hundreds of thousands of dollars in repayments as to which they were not legally entitled.

169. As a direct and proximate result of Defendants' fraud alleged herein, the Plaintiff and other class members have already, and will continue to, suffer actual harm in the absence of relief.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
## (CLAIM FOR BREACH OF FIDUCIARY DUTY – FRAUDULENT
## MISREPRESENTATION)

170. Plaintiff, Kevin Blackwell, individually and on behalf of a Class of Similarly Situated Persons, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

171. As plan managers and/or claims administrators for the self-funded Orange-Ulster School Districts Health Plan, Defendants were required to act solely in the interests of the Plan members and owed a fiduciary duty to Plaintiff and other plan members.

172. As plan managers and/or claims administrators for the self-funded Orange-Ulster School Districts Health Plan, Defendants had an affirmative duty to not fraudulently misrepresent their entitlement to lien, subrogation and/or repayment as from Plaintiff's and other plan members' personal injury recoveries.

173. Defendants made repeated and pervasive representations that Defendants were legally entitled to lien, subrogation and/or repayment as from Plaintiff's and other plan members' personal injury recoveries.

174. Defendants actively, affirmatively, and systematically misrepresented to the Plaintiff and other plan members that they were entitled to liens, subrogation and repayment.

175. Defendants had actual knowledge that their misrepresentations as to their purported entitlement to lien, subrogation and/or repayment as from Plaintiff's and other plan members' personal injury recoveries, and Plaintiff's and other plan members' purported obligation to pay Defendants pursuant to their lien, subrogation and/or repayment demands, was false when those representations were made.

176. As a result of Defendants' misrepresentations to Plaintiff and other plan members, Defendants actively and systemically recovered from the Plaintiff and other plan members hundreds of thousands of dollars in repayments as to which they were not legally entitled.

177. Defendants' conduct, as set forth above, violated its fiduciary duty to Plaintiff and other plan members.

178. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plaintiff and other plan members have already, and will continue to, suffer actual harm in the absence of relief.

### AS AND FOR A NINTH CAUSE OF ACTION
### (CLAIM FOR BREACH OF FIDUCIARY DUTY - FAILURE TO DISCLOSE MATERIAL INFORMATION)

179. Plaintiff, Kevin Blackwell, individually and on behalf of a Class of Similarly Situated Persons, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

180. As plan managers and/or claims administrators for the self-funded Orange-Ulster School Districts Health Plan, Defendants were required to act solely in the interests of the Plan members and owed a fiduciary duty to Plaintiff and other plan members.

181. As plan managers and/or claims administrators for the self-funded Orange-Ulster School Districts Health Plan, Defendants had an affirmative duty to disclose to Plaintiff and the other plan members material information relating to their administration of the Orange-Ulster School Districts Health Plan, including material information relating to their asserted rights to lien, subrogation and/or repayment as from Plaintiff's and other plan members' personal injury recoveries.

182. In asserting their rights to lien, subrogation and/or repayment as from Plaintiff's and other plan members' personal injury recoveries, Defendants failed to disclose material information that they were not entitled to lien, subrogation and/or repayment as from Plaintiff's and other plan members' personal injury recoveries under GOL § 5-335 or the terms of the Plan.

183. In failing to disclose that they had no right lien, subrogation and/or repayment as from Plaintiff's and other plan members' personal injury recoveries under GOL § 5-335 or the terms of the Plan, Defendants intended to deceive Plaintiff and other plan members as to their right to lien, subrogation and/or

repayment as from Plaintiff's and other plan members' personal injury recoveries.

184. As a result of Defendants' failure to disclose material information to Plaintiff and other plan members, Defendants actively and systemically recovered from the Plaintiff and other plan members hundreds of thousands of dollars in repayments as to which they were not legally entitled.

185. Defendants' conduct, as set forth above, violated its fiduciary duty to Plaintiff and other plan members.

186. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plaintiff and other plan members have already, and will continue to, suffer actual harm in the absence of relief.

## AS AND FOR A TENTH CAUSE OF ACTION
### (DIRECTING OR PERMITTING CONDUCT OF ANOTHER)

187. Plaintiff, Kevin Blackwell, individually and on behalf of a Class of Similarly Situated Persons, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

188. Pursuant to Section 877 of the Restatement (Second) of Torts, a person is subject to liability if he orders or induces the tortious conduct of another, if he knows or should know of circumstances that would make the conduct tortious if it were his own.

189. At all times relevant hereto, INDECS knew, or should have known, that New York law prohibits liens, subrogation claims and reimbursement demands by health insurers against insureds' personal injury settlement recoveries.

190. Despite such knowledge, INDECS retained, hired, authorized, induced, and allowed PHIA to assert liens, subrogation claims and/or repayment demands on behalf of INDECS, as against Plaintiff's and other plan members' personal injury settlement recoveries as part of a knowing and systemic effort to secure money from injured persons personal injury settlement recoveries in violation of law.

191. As a result of INDECS's conduct, Plaintiff and other plan members are entitled to declaratory, injunctive and monetary relief, including punitive damages.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### (ACTING IN CONCERT)

192. Plaintiff, Kevin Blackwell, individually and on behalf of a Class of Similarly Situated Persons, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

193. Pursuant to Section 876 of the Restatement (Second) of Torts, a party is subject to liability if it does a tortious act in concert with, or pursuant to a common design with, another, or if it knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other.

194. At all times relevant hereto, INDECS knew, or should have known, that PHIA's assertion of liens, subrogation demands and/or repayment demands as against Plaintiff's and other plan members' personal injury settlement recoveries, was in violation of New York law.

195. In asserting liens, subrogation demands and/or demands for repayment as against Plaintiffs' personal injury settlement recoveries, INDECS acted in concert with, and pursuant to a common design with, PHIA as part of a knowing and systemic effort to secure money from injured persons personal injury settlement recoveries in violation of law.

196. Pursuant to Section 876 of the Restatement (Second) of Torts, Defendants are liable to Plaintiff and other plan members for their assertion of liens, subrogation demands and/or demands for repayment as against their personal injury settlement recoveries.

197. As a result of Defendants' conduct, Plaintiff and other plan members are entitled to declaratory, injunctive and monetary relief, including punitive damages and set forth hereinafter.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### (RELIEF REQUESTED)

198. Plaintiff, Kevin Blackwell, individually and on behalf of a Class of Similarly Situated Persons, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

WHEREFORE, the plaintiff, Kevin Blackwell, individually and on behalf of a Class of Similarly Situated Persons, respectfully requests that this Court enter an Order:

A. Determining that this action is a proper class action, certifying the named Plaintiffs as class representatives for the classes alleged herein and Plaintiffs' counsel as Class Counsel;

B. Awarding judgment that Defendants' conduct was a violation of New York General Obligations Law §5-335 and granting such preliminary and permanent relief, including but not limited to enjoining Defendants' actions complained of herein and the imposition of a constructive trust;

C. Awarding judgment that the Defendants do not have a right to assert and/or collect any lien or reimbursement under health insurance plans against other insureds who have settled personal injury, medical, dental, podiatric malpractice, or wrongful death cases under policies which do not contain a repayment obligation requiring Plaintiffs to repay the Defendants.

D. Awarding judgment that Defendants' conduct was a violation of the Orange-Ulster School Districts Health Plan and granting such preliminary and permanent relief, including but not limited to enjoining Defendants' actions complained of herein and the imposition of a constructive trust;

E. Award of damages in favor of each named Plaintiff and each Other Similarly Situated Individual, equal to the sum of the lien or reimbursement paid by each Plaintiff and any other

damages incurred relative to such lien or repayment demand in an
amount in excess of $75,000.00;

F. Awarding, on Plaintiff's and the Similarly Situated
Plaintiffs' claims, recovery against defendants in the amount of
that Defendants collected from liens that were unlawfully
enforced and collected upon in violation of New York General
Obligations Law §5-335, plus Plaintiffs' costs in this suit,
including attorney's fees in an amount of excess of $75,000.00;

G. Awarding restitution to all Plaintiffs of all of any and
all monies Defendants realized or recovered as for all damages
caused by defendants' violation of New York General Obligations
Law §5-335, plus Plaintiffs' costs in this suit, including
attorney's fees in an amount in excess of $75,000.00;

H. Awarding, on Plaintiff's and the Similarly Situated
Plaintiffs' claims, recovery against defendants in the amount of
that Defendants collected from liens that were unlawfully
enforced and collected upon in violation of the Plan's terms,
plus Plaintiffs' costs in this suit, including attorney's fees in
an amount of excess of $75,000.00;

I. Awarding restitution to all Plaintiffs of all of any and
all monies Defendants realized or recovered as for all damages
caused by defendants' violation of the Plan's terms, plus
Plaintiffs' costs in this suit, including attorney's fees in an
amount in excess of $75,000.00;

J. Awarding in favor of named Plaintiff and each Other Similarly Situated Individual based on Defendants' conversion, all damages Plaintiffs and Class members have sustained as a result of Defendants' conduct as may be permitted under the relevant statutes and law including punitive damages;

K. Judgment in favor of named Plaintiff and every member of the class against the defendants for all harms and damages arising from the unlawful lien and repayment actions of the defendants subsequent to the enactment and effective date of the New York General Obligations Law §5-335;

L. Judgment in favor of named Plaintiff and every member of the class against the defendants for all harms and damages arising from the unlawful lien and repayment actions of the defendants with regard to every of the defendants' violations concerning repayment under the Plan.

M. Judgement ordering defendants to return or release all monies which have been taken, liened, charged, received, or encumbered subsequent to the enactment and effective date of the New York General Obligations Law §5-335; and that such monies held, paid or otherwise encumbered be returned or released free of all claims, charges, holds, claims, demands, interest, liens, pretensions;

N. Judgement ordering defendants to return or release all monies which have been taken, liened, charged, received, or encumbered arising from the unlawful lien and repayment actions

of the defendants with regard to every of the defendants'
violations concerning repayment under the Plan.

O. Judgment awarding interest, counsel fees, costs and
penalties as authorized by law against the defendants in
connection with the defendants' unlawful conduct with respect to
the claims of the named Plaintiff and each Other Similarly
Situated Individual;

P. Such other and further relief as the Court may deem just
and proper.


BY: _____/s/_____
    CHARLES KANNEBECKER, ESQUIRE
    Attorneys for Plaintiffs
    104 West High Street
    Milford, Pennsylvania 18337
    (570) 296-6471
    Kannebecker@wskllawfirm.com

**<u>JURY TRIAL DEMANDED</u>**

Plaintiffs hereby demand a trial by jury.


BY: _____/s/_____
CHARLES KANNEBECKER, ESQUIRE
Attorneys for Plaintiffs
104 West High Street
Milford, Pennsylvania 18337
(570) 296-6471
Kannebecker@wskllawfirm.com